APPEAL OF WINGOOD REALTY COMPANY.

Docket No. 6576.        Decided September 25, 1926.

> In the absence of unusual circumstances the price at which property is sold establishes its value, and in the absence of any showing of such circumstances opinion evidence will not be regarded as sufficient to establish a value greatly in excess of that shown by a *bona fide* transaction.

*Benjamin Mahler, Esq.,* for the petitioner.
*J. Arthur Adams, Esq.,* for the Commissioner.

This is an appeal from the determination of a deficiency of $12,-616.01 in income and excess-profits taxes for the calendar year 1919, and alleges three errors—(1) the refusal of the Commissioner to grant personal service classification; (2) the refusal of the Commissioner to grant special assessment under sections 327 and 328 of the Revenue Act of 1918; and (3) the failure of the Commissioner to allow a paid-in surplus on account of certain leaseholds acquired by the taxpayer upon incorporation. The first assignment of error was withdrawn upon the hearing.

### FINDINGS OF FACT.

The taxpayer is a New York corporation with its principal office in New York City. It was incorporated in February or March, 1914, with a capitalization of $10,000 par value common stock. Upon incorporation it issued all of its capital stock to William Smith and M. R. Goodwin, and at or about the same time entered into certain leases previously negotiated by these two individuals.

The leases acquired at the time of organization were as follows:

A lease for five years and seven months from March 1, 1914, covering the premises at 55 West 76th Street, Manhattan, at a monthly rental of $683.33. The leased property was a seven-story elevator apartment, 60 feet by 102 feet, 2 inches.

A lease for five years and seven months from March 1, 1914, covering premises 330 West 95th Street, Manhattan, at a monthly rental of $1,229.17. This lease was negotiated by Smith and was executed by the corporation on or about March 1, 1914, and contained a provision for a renewal for five additional years. The leased premises comprised a seven-story, elevator apartment, 100 by 100 feet.

A lease for four years and seven months from March 1, 1914, covering the premises 566 West 167th Street, Manhattan, at a monthly rental of $1,333.33. This lease was originally made to William Smith in February, 1914, and was assigned to the petitioner on February 25, 1914. The leased premises comprised a six-story, elevator apartment.

A lease for three years from October 1, 1913, covering the premises 511 West 146th Street, New York City, at a monthly rental of $333.33, with a privilege of renewal for an additional four years. This lease was originally made to William Smith and was assigned by him to the corporation at the time of its organization.

A lease covering the premises 523 West 187th Street, Manhattan, for three years and seven months from May 1, 1914, at an annual rental of $1,500, providing for a renewal for three additional years. This lease was negotiated by Goodwin but entered into by the corporation on May 1, 1914.

Thereafter during 1914 and 1916 the corporation entered into various other similar leases which had been negotiated by Smith or Goodwin.

The Commissioner refused to grant the taxpayer classification as a personal service corporation and computed the deficiency under section 302 of the Revenue Act of 1918.

OPINION.

PHILLIPS: The taxpayer was incorporated in February or March, 1914, and upon its incorporation entered into three leases previously negotiated by its incorporators and took by assignment two leases which had been entered into by these incorporators shortly prior to the date of the assignment. No consideration was paid to the lessors other than an undertaking to pay the monthly rental. It was shown that the amounts of rent which should be received from the property exceeded the rent to be paid and the estimated expenses, and upon that basis opinion evidence of two qualified witnesses was introduced in an attempt to establish a substantial cash value for each of such leases for the purpose of invested capital and exhaustion deductions. On the other hand, Smith testified:

At that time it was very easy to obtain leases. There were a lot of them around and the owners were very glad to unload their property where you would guarantee them income and I had a chance to pick up dozens of leases I had to be very careful.

The statute provides for the inclusion in invested capital of the " actual cash value " of property paid in for stock. In the absence of unusual circumstances, the price at which property is sold ordinarily establishes its value. There has been no showing here that the lessors were defrauded or that they did not know the full rental value of their property. There has been no showing that any greater rental could have been obtained by them under similar leases from any other source. Presumably the lessors secured as great a return as possible.

The testimony establishes that realty was dormant in 1914, that landlords feared losses from the operation of their property and were very willing to enter into leases securing them a certain return. The story of such transactions is not invariably one of profit to the lessee and while the incorporators may have used good judgment and the leases did prove to be profitable, this does not in our opinion establish any cash value at the time of acquisition in excess of the value established by negotiations between lessor and lessee. We are not willing in such cases, with no showing of any unusual circumstances surrounding the transaction, to substitute opinion evidence of values for those established by an actual transaction.

The Commissioner computed the deficiency under section 302 of the Revenue Act of 1918. Neither party introduced any evidence as to what, if any, invested capital the taxpayer had. The determination of the Commissioner must be approved.

*The deficiency is redetermined to be $12,- 616.01. Order will be entered accordingly.*